UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

MARKS ONE CAR RENTAL, INC.

       Plaintiff,

                                     Case No.
v.                                      Hon.

AUTO CLUB GROUP INSURANCE COMPANY, a Michigan insurance entity; THE FARMERS AUTOMOBILE INSURANCE ASSOCIATION, an Illinois insurance entity, BRISTOL WEST INSURANCE COMPANY, an Ohio insurance entity; HELPPOINT CLAIM SERVICES, an Illinois corporation; 21ST CENTURY INSURANCE COMPANY, a California insurance entity; CITIZENS INSURANCE COMPANY OF AMERICA, Michigan insurance entity; NATIONWIDE INSURANCE COMPANY OF AMERICA, a Wisconsin insurance entity; TITAN INSURANCE COMPANY, a Michigan insurance entity; ALLIED INSURANCE COMPANY OF AMERICA, an Ohio insurance entity; FOREMOST INSURANCE COMPANY GRAND RAPIDS MICHIGAN, a Michigan insurance entity; THE HERTZ CORPORATION, a Delaware Corporation; and ENTERPRISE LEASING COMPANY OF DETROIT, a Michigan Corporation,

       Defendants.

_____/

Charles T. Busse (P49770)
Balian & Busse, PLC
Attorneys for Plaintiff
811 S. Boulevard E., Suite 200
Rochester Hills, MI 48307
(248) 402-0000
(248) 402-0011
chuck@busselaw.com

_____/

## **COMPLAINT AND JURY DEMAND**

    NOW COMES Plaintiff, Marks One Car Rental, through its attorneys,

Balian & Busse, PLC, and for its Complaint states as follows:

## THE PARTIES

1.   Plaintiff, Marks One Car Rental, Inc., is a Michigan corporation with its principal place of business located at Oak Park, Oakland County, Michigan.

2.   Defendant, Auto Club Group Insurance Company, an affiliate of AAA, is a Michigan insurance entity.

3.   Defendant, The Farmers Automobile Insurance Association, is an Illinois insurance entity, doing business in Michigan.

4.   Defendant, Bristol West Insurance Company, is an Ohio insurance entity, doing business in Michigan.

5.   Defendant, 21st Century Insurance Company, is a California insurance entity, doing business in Michigan.

6.   Defendant, Citizens Insurance Company of America, is a Michigan insurance entity.

7.   Defendant, Nationwide Insurance Company of America, is a Wisconsin insurance entity, doing business in Michigan.

8.   Defendant, Titan Insurance Company, is a Michigan insurance entity.

9.   Defendant, Allied Insurance Company of America, is an Ohio insurance entity, doing business in Michigan.

10.    Defendant, Foremost Insurance Company Grand Rapids Michigan, a
       Michigan insurance entity.

11.    Defendant, The Hertz Corporation, a Delaware corporation, doing
       business in Michigan.

12.    Defendant, Enterprise Leasing Company of Detroit, a Michigan
       corporation.

13.    Defendant, Help Point Claim Services, an Illinois corporation.

## JURISDICTION AND VENUE

14.    Jurisdiction is proper and based on 28 U.S.C. § 1331 because a
       federal question is at issue. This Court has jurisdiction over the state
       law claims under 28 U.S.C. § 1367.

15.    The amount in controversy exceeds $75,000.00, exclusive of interest,
       costs, and attorney fees.

16.    Venue is proper in this Judicial District under 28 U.S.C. § 1391.

## COUNT I:
## VIOLATION OF RACKETEER CORRUPT ORGANIZATION ACT
## ("RICO") – 18 U.S.C. & 1962 (c) or (d)

### GENERAL RICO AVERMENTS

#### A.   THE ENTERPRISE

17.   Plaintiff is informed and believes and based thereon, alleges that an enterprise existed such that the Defendants, associated together for the common purpose of defrauding Plaintiff of payment for direct bill car rental services in an undetermined amount that in no event is greater than TWENTY-FIVE MILLION DOLLARS ($25,000,000).

18.   The enterprise involves: a) Economic relationships which existed between Plaintiff and third parties, including, but not limited to, potential customers for rental cars covered by Insurance Company Defendant's insurance policies, containing direct and future economic benefits to Plaintiff.  b)  Insurance Company Defendants were aware of such probable future benefits because its insured drivers had consistently used Plaintiff's car rental services before Plaintiff was suddenly eliminated from the respective Defendant insurance company direct-billing programs.  c) Defendant car rental companies, in conjunction with Defendant insurance companies, sought to interfere with Plaintiff's economic relationships by, inter alia, engaging

in the following improper conduct; deliberately, intentionally and exclusively steering its insured's to Defendant car rental companies, with which it had a direct billing program, in violation of Michigan Law MCL 500.2110(b).  d) The Enterprise intentionally undertook all these actions to disrupt, and did disrupt, Plaintiff's ongoing and potential economic relationships by forcing Plaintiff to either recover the car rental fees directly from the insured, or request that customers complain to Defendants in the hope that Defendants would cover the charges directly. Each of these objectives of the enterprise willfully and intentionally alienated the Plaintiff's customer base, knowingly and willfully resulting in substantial economic harm.

**B.    PATTERN OF RACKETEERING**

19.    The enterprise, with Defendant [Rental Car Company's] acting by and through Farmers Insurance (and another other insurance companies other than State Farm) engaged in a pattern of racketeering activity by: a) Interfering with Plaintiff's economic relationship through their concerted efforts of deliberately, intentionally and exclusively steering its insured's to select car rental car companies with which it had a direct-billing agreement, thereby violating Michigan's anti-steering law prescribed by MLC 500.2110(b).  b) Utilizing illegal steering tactics,

which were motivated by self-interest and racial bias, in an effort to steer its insured drivers to car rental facilities that render services at a lower price and/or that were not Arab owned and operated.    d) Concealing the enterprise and pattern of racketeering activity from Plaintiff. The pattern of racketeering activity involves in excess of fifty (50) predicate acts (constituting mail fraud and/or wire fraud), where by the Defendant's conspired to violate MLC 500.2110(b) and in doing so, directly affecting the named Plaintiff, and potentially over one hundred other insured policyholders, who were subject to the consequence of the Defendant's overt efforts of conspiring to violate the Michigan Anti-Steering Statute (MCL 500.2110(b).

20.    The enterprise and pattern of racketeering activity hereunder, used the United States mail and/or other private express mail services, interstate telephone and telefax lines, cellular phones and interstate transmission, all of which constitutes engaging in interstate commerce, for the express purpose of committing fraud, deceit, or conspiring to commit fraud or deceit.  The Defendant's racketeering activities deprived Plaintiff of an undetermined amount that is in no event greater than 25 million dollars of certain economic benefits,

which was proximately related to Defendant's willful conspiracy to violate well-established laws prohibiting their conduct.

## C.   RICO OFFENSES

21.   As alleged with particularity below, Defendants and each of them are associated with the enterprise, and conducted or participated in the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. & 1962 (c) or (d).

22.   As alleged with particularity below, Defendants and each of them conspired with the other Defendants to violate the provisions of 18 U.S.C. & 1962 (c) or (d).

## D.   PREDICATE OFFENSES

## (1)   MAIL FRAUD

23.   As alleged with particularity below, Defendants and each of them devised or intended to devise a scheme or artifice to defraud Plaintiff and in doing used the U.S. Mail, and/or other private or commercial interstate carriers to: a) contact Plaintiff's customers for the purpose deliberately and intentionally steering them to select car rental companies.   b) contact Plaintiff's customers to disrupt Plaintiff's ongoing and potential economic relationships with Plaintiff by forcing Plaintiff to either recover the car rental fees directly from the insured,

or request in via U.S. Mail the customers complain to Defendants in the hope that Defendant's would cover the charges directly, thus alienating the Plaintiff's customer base resulting in substantial economic harm. c) Conceal the enterprise and pattern of racketeering activity from Defendants and utilize the federal U.S. Mail system for the express purpose of violating the Michigan Anti-Steering Statute prescribed by MCL 500.2110(b).

**(2) WIRE FRAUD**

24. As alleged with particularity below, Defendants and each of them, devised or intended to devise a scheme or artifice to defraud Plaintiff and in doing so used interstate telephone, telefax lines, cellular phones and interstate transmission to a) contact Plaintiff's customers for the purpose deliberately and intentionally steering them to select car rental companies. b) contact Plaintiff's customers to disrupt Plaintiff's ongoing and potential economic relationships with Plaintiff by forcing Plaintiff to either recover the car rental fees directly from the insured, or request in via U.S. Mail the customers complain to Defendants in the hope that Defendants would cover the charges directly, thus alienating the Plaintiff's customer base resulting in substantial economic harm. c) Conceal the enterprise and pattern of racketeering activity from

Defendants and utilize the federal U.S. Mail system for the express purpose of violating the Michigan Anti-Steering Statute prescribed by MCL 500.2110(b).

## COUNT II:
## TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

25.   Plaintiff repeats and realleges the preceding allegations as though fully set forth herein.

26.   Economic relationships existed between Plaintiff and third parties, including, but not limited to, potential customers for rental cars and potential customers for repair work and services covered by Defendants' insurance policies, containing future economic benefits to Plaintiff.

27.   Defendants are aware of such probable future benefit because its insured drivers had consistently used Plaintiff's car rental services before Plaintiff was suddenly eliminated from the direct-billing program.

28.   Defendants sought to interfere with Plaintiff's economic relationships by, *inter alia,* engaging in the following improper conduct: deliberately and intentionally steering its insured's to select a car rental company with which it has a direct-billing agreement.

29.  Defendants intentionally undertook all these actions to disrupt, and did disrupt, Plaintiff's ongoing and potential economic relationships by forcing Plaintiff to either recover the car rental fees directly from the insured or request that the customers complain to Defendants in the hope that Defendants would cover the charges directly.   Each of these options alienates Plaintiff's customer base.

30.  Such steering tactics are motivated by self-interest and in the case of Defendant Farmers Insurance racial bias, in an effort to steer its insured drivers to car rental facilities that render services at a lower price, or in the case of Defendant Farmers Insurance, steer clients away from the Plaintiff for racially biased reasons.

31.  As a proximate and direct result of Defendants' actions, Plaintiff has suffered losses and damages including, but not limited to, Plaintiff's loss of profits and Plaintiff's reputation for quality and responsiveness developed over many years.

### COUNT III: VIOLATION OF THE MICHIGAN INSURANCE CODE – MICHIGAN ANTI-STEERING STATUTE – MCL 500.2110(b)

32.  Plaintiff repeats and re-alleges the preceding allegations as though fully set forth herein.

33.   Defendants steer and have steered its insured drivers to select a car rental company with which they have a direct-billing agreement.

34.   Defendants steer its insured drivers by intimidating them into the mistaken belief that they are otherwise required to make substantial out-of-pocket payments for the rental of a vehicle from Plaintiff or other car rental companies that do not have direct-billing agreements.

35.   Defendants thus violated MCL 500.2110b by, *inter alia*, unreasonably restricting its insured from using Plaintiff's car rental service—a replacement service or product covered by their policies.

36.

## COUNT IV: VIOLATION OF THE SHERMAN ANTI-TRUST ACT

37.   Plaintiff repeats and re-alleges the preceding allegations as though fully set forth herein.

38.   Defendants violated 15 USC § 2, which states that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations" has violated the law.

39.   Defendants acted together for the purpose of influencing potential customers to engage the services of Defendant car rental companies and/or for the purpose of dissuading potential customers to engage the services of Plaintiff and/or any other combined action yet to be discovered.

40.   By taking the actions alleged above, Defendants intended to restrain trade and caused restraint of trade by

(a) preventing competition for car rental services in the relevant geographic market;

(b) foreclosing Plaintiff's ability to compete the in the relevant geographic market in providing the relevant service;

(c) eliminating competitive options for potential customers;

(d) monopolizing or attempting to monopolize the relevant geographic and product markets; and

(e) other such specific intent to restrain trade and/or other restraints upon trade yet to be discovered.

41.   The aforementioned injuries are those against which the antitrust laws are designed to prevent.

42. Given the nature of the relevant product market and the unique characteristics of the relevant geographic market, there is a dangerous probability for Defendants to achieve monopoly power.

43. As a direct and proximate result of the above-described violations of 15 USCS §1 and 2, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including but not limited to loss of sales and profits, attorney fees and costs in defending this lawsuit, impaired ability for business growth, loss of market share, reduction in value of the business, other costs and damages, and statutory treble damages.

## COUNT V: VIOLATION OF FEDERAL TRADE COMMISSION ACT 15 & 145 – UNLAWFUL AND DECEPTIVE TRADE PRACTICES

44. Plaintiff repeats and re-alleges the preceding allegations as though fully set forth herein.

45. Pursuant to FTCA 15 & 45, "unfair or deceptive acts, in or affecting commerce are strictly prohibited.

46. Defendant's actions caused, or were likely to cause, substantial injury to the Defendant and their customers (i.e. consumers), which could not be reasonably avoided by the consumers.  Such illegal conduct

was not outweighed by countervailing benefits to the consumer, or the spirit of competition.

47. By and through Defendant's illegal conduct, they have mutually engaged in unfair, deceptive, and fraudulent business acts by depriving consumers of the benefit of the choice of Plaintiff's and other car rental company's services.

48. By and through its illegal scheme and racketeering activities, in fraudulently steering insured's from Plaintiff's car rental facility, Defendants have engaged in materially deceptive practices and representations designed to, and which did, and which continue to, mislead their insured's into the belief that the insured's do not have a choice as to the place and location that the insured may rent a vehicle.

49. On or about the date of May 22nd, 2012, during the course of a conversation with an executive of Plaintiff's car rental company, Defendant Farmers Insurance Director of Claims for Michigan Operations, Mark Ott, characterized Maher Waad, the owner and operator of Plaintiff Mark's One Car Rental, "a crook".

50. On or about the date of May 22, 2012, during a telephone conversation with Maher Waad, the owner and operator of Plaintiff Mark's One Car Rental, Defendant Farmers Insurance Director of Claims for Michigan Operations Mark Ott referred to Mr. Waad, an Arab American, as a "sand nigger".

51. On or about the date of May 22, 2012, during a visit to Mark's One Collision, located at 2325 East Eight Mile Road, Detroit, Michigan, Farmers Insurance adjusters Steve Wezner and Kevin Wegrzyowicz confronted Mark's One Car Rental owner and operator Maher Waad and called him a "stupid Arab" and threatened "to get him" and referred to him as a "sand nigger".   The foul utterances occurred in the presence of several witnesses.

52. On or about the dates and events subsequent to the racially motivated acts perpetrated by the Defendant Farmers Insurance Company against Mr. Waad, the Plaintiff was summarily and without notice, or reason, removed from Defendant Farmers Insurance Companies direct billing program for rental car companies.

53.   Prior to such removal, Plaintiff provided direct bill rental car services to Defendant Farmers Insurance Company insured's with neither incident, nor customer complaints and void of any documented customer, or company dissatisfaction.

54.   On or about the date of May 24, 2012, in response to the reporting of the acts of racially motivated threats and intimidation, Defendant Farmers Insurance President Brian Murphy corresponded with executives from Plaintiff's corporate offices assuring to initiate an investigation of the allegations Mr. Ott characterized Mr. Waad as "a crook" and a "sand nigger".

55.   On or about the date of May 25th, 2012, an executive from Plaintiff's corporate offices received a telephone call from the aide to Defendant Farmers Insurance President Brian Murphy, who assured Plaintiff that Mr. Ott was ordered to Defendant Farmers Insurance's Los Angeles, California corporate offices for a review of the allegations of racial bias and intimidation.

56.   Shortly thereafter, Mr. Ott was terminated from Defendant Farmers Insurance Company, thereby substantiating and corroborating the allegation contained herein.

57. The racial bias perpetrated by the aforementioned employees of Defendant Farmers Insurance was precipitated by a prior insurance investigation by Farmers Special Investigative Unit (SIU) claims adjuster Thomas Berry, who investigated the February, 2010 commercial fire loss involving property insured by Mr. Waad with Defendant Farmers Insurance. The claim was ultimately litigated and Defendant Farmers Insurance settled with Mr. Waad out of court.

58. After the settlement was reached, Mr. Berry, in the course of his employment with Defendant Farmers Insurance, initiated a campaign of harassment and intimidation that instigated the subsequent racial bias, threats and intimidation of Defendant Farmers Insurance representatives, which is now the subject of this lawsuit and the allegations herein.

59. Defendant's acts and omissions alleged above constitute unlawful and unfair trade practices within the meaning of the Federal Trade Commission Act – 15 & 145, which is empowered to prevent unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce.

## COUNT VI: CIVIL CONSPIRACY

60.  Plaintiff repeats and re-alleges the preceding allegations as though fully set forth herein.

61.  Defendants are members of a combination of two or more persons or entities and have acted in concert on the object or course of action.

62.  One or more of the members of the conspiracy committed an unlawful, overt act(s) and continue to commit those acts to further the object or course of action of the conspiracy.

63.  Defendants have illegally, maliciously, and/or wrongfully conspired with one another with the intent to commit the torts alleged within the Counts contained within this Complaint, for the improper purpose of steering or influencing potential customers to engage the services of Defendant car rental companies and/or for the purpose of dissuading potential customers to engage the services of Plaintiff.

64.  As a result of the conspiracy and Defendants' illegal, wrongful or tortious acts, Plaintiff has sustained substantial economic and non-economic injuries and damages, past and future, including but not limited to loss of sales and profits, attorney fees and costs in defending this lawsuit, impaired ability for business growth, loss of

market share, reduction in value of the business, other costs and damages, and statutory treble damages in excess of $25,000,000.

65. Defendants are jointly and severally liable to Plaintiff for their damages.

## COUNT VII: UNJUST ENRICHMENT

66. Plaintiff repeats and re-alleges the preceding allegations as though fully set forth herein.

67. Defendant Insurance Companies made payments to Defendant Car Rental Companies for car rental business that was deliberately steered away from Plaintiff and other car rental companies.

68. These payments constitute a benefit which Defendant Car Rental Companies individually sought and voluntarily accepted.

69. Defendant Car Rental Companies have been unjustly enriched by receipt of these wrongfully-obtained payments from Defendant Insurance Companies.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an order as follows:

A.    Grant Plaintiff a temporary and permanent injunction enjoining and restraining Defendants, its officers, directors, employees, agents, servants, and all persons, firms, corporations in active concert or participation with it from steering its insured to car rental companies with which they have direct-billing agreements;

B.    Grant Plaintiff its actual damages, including amounts for loss of sales and profits; attorney's fees and expenses; impaired ability for business growth; impaired ability to attract investment or investors; loss of market share; and loss of business reputation;

C.    Grant Plaintiff treble damages pursuant to the applicable statutes;

D.    Award Plaintff punitive and/or exemplary damages because of the egregious, malicious, and tortuous conduct of Defendants; AND

E.    Award Plaintiff any further relief that this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.


Respectfully submitted,


 /s/ Charles T. Busse
Charles T. Busse (P49770)
Attorney for Plaintiff
811 South Blvd E., Suite 200
Rochester Hills, Michigan  48307
(248) 402-0000
chuck@busselaw.com