UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARKS ONE CAR RENTAL, INC., MARKS
ONE LLC, d/b/a/ MARKS ONE COLLISION,
and MAHER WAAD,

       Plaintiffs,

vs.                                                                          Case No. 13-14610

AUTO CLUB GROUP INSURANCE                        HON. AVERN COHN
COMPANY, THE FARMERS INSURANCE
EXCHANGE, BRISTOL WEST INSURANCE
COMPANY, 21st CENTURY INSURANCE COMPANY,
CITIZENS INSURANCE COMPANY OF AMERICA,
FOREMOST INSURANCE COMPANY
GRAND RAPIDS MICHIGAN, and
GEICO GENERAL INSURANCE COMPANY,

       Defendants.
_____/

## MEMORANDUM AND ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO
## DISMISS (Docs. 103, 104, 124)

### I. Introduction

This is a business tort case. Although the case has over 100 docket entries, it is still in the pleading stages. Following motions to dismiss the original and amended complaint, the Court granted leave to file a second amended complaint. The Second Amended Complaint names as plaintiffs Marks One Car Rental, Inc., (a rental car company), Marks One LLC, d/b/a Marks One Collision (a collision repair company) and Maher Waad (the principal in both plaintiff companies). Broadly stated, plaintiffs say that defendants have defamed plaintiffs in their respective investigations of plaintiffs'

repair and rental activity, causing a loss of business.  They further contend that

defendants have a racial bias against Maher Waad.  The Second Amended Complaint

asserts the following claims:

| | | |
|---|---|---|
| Count I | Tortious Interference with Business Expectancy (against all defendants) | |
| Count II | Defamation (against all defendants) | |
| Count III | Violation of M.C.L. § 600.2911 (against all defendants) | |
| Count IV | Civil Conspiracy (all defendants) | |
| Count V | Unlawful Discrimination under 42 U.S.C. § 1981 (against Farmers Insurance Exchange, Farmers Insurance Company, Bristol West Insurance Company, 21st Century Insurance Company only) | |
| Count VI | Conspiracy under 42 U.S.C. § 1985(3) (against all defendants) | |

Before the Court are dispositive motions filed by all of the defendants, to wit:

21st Century Insurance Company, Bristol West Insurance Company, Farmers Insurance Exchange, Foremost Insurance Company of Grand Rapids'[1] Motion to Dismiss the Second Amended Complaint (Doc. 103).

Auto Club Group Insurance Company and Citizens Insurance Company of America's[2] Motion to Dismiss the Second Amended Complaint (Doc. 104).

Geico General Insurance Company's (Geico) Motion to Dismiss and/or For

---

[1]For ease of reference, 21st Century Insurance Company, Bristol West Insurance Company, Farmers Insurance Exchange, and Foremost Insurance Company of Grand Rapids will be collectively referred to as "Farmers" as they are all affiliated with Farmers Insurance Exchange.

[2]For ease of reference, Auto Club Group Insurance Company and Citizens Insurance Company of America will be collectively referred to as "Auto Club/Citizens" except where appropriate to refer to them individually as "Auto Club" or "Citizens."

Summary Judgment[3] (Doc. 124)

For the reasons that follow, the motions will be granted in part and denied in part. As plaintiffs' concede,[4] Count III, asserting a claim for violation of the Michigan Consumer Protection Act, does not state a plausible claim and will be dismissed.  Count VI, asserting a federal conspiracy claim based on a racially motivated conspiracy, does not state a plausible claim and will be dismissed.  The remaining counts of the Second Amended Complaint, Counts I, II, IV, and V, state plausible claims for relief.  Important for resolving the motions is the fact that the Court must accept the statements in the Second Amended Complaint and exhibits as true.  Whether the statements will hold up after discovery is another matter.

## II.  Background

Plaintiffs filed the Second Amended Complaint after the Court granted them leave to do so and after several of the defendants filed motions to dismiss the original and amended complaint.  In the order granting plaintiffs leave, the Court said: "no further changes in the complaint will be allowed."  (Doc. 90 at p. 3).

---

[3]In support of seeking summary judgment, Geico submits affidavits from its employees who deny the allegations in the complaint.  Geico's request for summary judgment, even if accompanied by affidavits, is premature.  The Supreme Court has explained, "the plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Plaintiffs have not had discovery.  At this point, the record as to Geico contains competing factual assertions, rendering summary judgment inappropriate.  Thus, the Court will consider only Geico's motion to dismiss.

[4]See Doc. 126, Page ID 1867 at p. 26 (Plaintiffs' brief in response to Geico's motion at p. 19).

The Court also stayed discovery pending resolution of the pending motions to dismiss and ordered that "evidence pertaining to this matter shall be preserved and not destroyed."  (Doc. 123).

### III.  Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the Court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  See Albright v. Oliver, 510 U.S. 266 (1994); Bower v. Fed. Express Corp., 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. at 679 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more

4

than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).

## IV.  Analysis

Farmers, Auto Club/Citizens, and Geico all present the same arguments in support of dismissal.  As such, the motions will be analyzed together and going forward, they will be collectively referred to as "defendants" except where appropriate to refer to them individually.

## A.  Statutory Immunity

5

Defendants contend that they are not subject to any state tort claims (under Counts I, II, and IV) because they are statutorily immune from such claims. They first cite M.C.L. § 500.4509(3), which reads in full as follows:

> In the absence of malice, **an insurer**, or any officer, employee, or agent of an insurer, ***or any person*** **who cooperates with, furnishes evidence, or provides information regarding suspected insurance fraud to an authorized agency, the national association of insurance commissioners, or any organization**, or who complies with an order issued by a court of competent jurisdiction acting in response to a request by any of these entities to furnish evidence or provide testimony, is not subject to civil liability for libel, slander, or any other tort, and **a civil cause of action of any nature does not exist against the person, for filing a report, providing information, or otherwise cooperating with an investigation or examination of any of these entities, unless that person knows that the evidence, information, testimony, or matter contains false information pertaining to any material fact or thing**.

M.C.L. § 500.4509 (emphasis added).

Defendants contend that they are immune from liability because the clause **"who cooperates furnishes evidence, or provides information regarding suspected insurance fraud to an authorized agency, the national association of insurance commissioners, or any organization**" only applies to a "person" under the last antecedent rule of statutory construction.[5] That is, because there is not a comma after "person," the following language only applies to a "person" and not an "insurer." In § 500.4509(3), the "last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence" of the phrase plaintiffs emphasize is "any

---

[5]See 2A Sutherland Statutory Construction § 47.33 at 499-500. The last antecedent rule provides that "qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Id. at 498.

person." Thus, defendants say that their actions - in communicating with their policy holders about suspected fraudulent and/or bad practices by plaintiffs - cannot form the basis for civil liability.  Plaintiffs contend that applying the last antecedent rule would give the statute an unreasonable interpretation.

Plaintiffs say that this section should be interpreted to apply the qualifying phrase to insurers, officers, employees or agents of the insurer and a person.  In other words, any of them who provide evidence or information regarding fraud to an authorized agency, the national association of insurance commissioners, or any organization are immune.  Plaintiffs go on to argue that the conduct here does not fall within this interpretation because defendants were not providing evidence or information to an agency, but rather making defamatory statements to policyholders and plaintiffs' customers about plaintiffs' business practices.

Plaintiffs have the better view.  There is scant authority interpreting this section. One Michigan court has described the purpose of the section as follows:

> The purposes of both MCL 29.4 of the Fire Prevention Code and MCL 500.4509 of the Insurance Code similarly foster the communicative and evaluative processes related to fire prevention and insurance-fraud prevention.  And, both statutory provisions clearly grant the protection of immunity to persons who have provided information **related to investigations of suspected arson and suspected insurance fraud** if they acted without malice.

Radu v. Herndon & Herndon Investigations, Inc., 302 Mich. App. 363, 379 (2013) (emphasis added).  Moreover, the Michigan Non-Standard Jury Instructions suggest that this section is intended to protect everyone, insurers included, who provides information or evidence to an organization or agency in the course of an investigation. See Mich. Non-Standard Jury Instr. Civil §§ 46:47, 57:14.  Because the conduct

7

described in the Second Amended Complaint does not fall within that context, the statute does not provide defendants with immunity.

Moreover, even if the statute somehow applied to defendants, they would not be entitled to immunity if they acted with malice.  While defendants argue that the conduct does not constitute malice, such an argument is not appropriate on a motion to dismiss. The complaint and exhibits–consisting of declarations from plaintiffs' customers and policyholders of defendants–sets forth sufficient facts to make a plausible finding that the statements made about plaintiffs' were done with malice.  Discovery may reveal otherwise, but plaintiffs have plead malice.

Defendants also cite another statutory section to argue they are immune.  The applicable statute, M.C.L. § 500.2124(1) reads as follows:

> **There shall be no civil liability on the part of, and a cause of action of any nature shall not arise against**, the commissioner, **an insurer**, an employee of an insurer, an authorized representative, agent, or employee of the commissioner, **or any licensed insurance agent** furnishing to an insurer information required pursuant to sections 2122 and 2123 **relating to reasons for cancellation, nonrenewal, or declination, for any statement made by them concerning an insured or applicant for insurance**.

Id. (emphasis added).  Defendants interpret this section as providing them with immunity for any statements made "concerning an insured" and the statements its employees made about plaintiffs were to its insureds and therefore were "concerning an insured.  Defendants say that the qualifier "relating to reasons for cancellation, nonrenewal or declination" applies, under the last antecedent rule, to "any licensed insurance agent."

Plaintiffs say that the qualifier applies to everyone, including an insurer, and

8

grants immunity if they give information to an insured relating to reasons for cancellation, nonrenewal or declination.  Plaintiffs again have the better view.[6]  This portion of the statute deals with insurance entities communicating with other insurance entities regarding why insureds had their insurance cancelled, not renewed, or declined. In fact, the two sections directly preceding MCL 500.2124 are entitled "Declination of Insurance" (MCL 500.2122) and "Termination of Insurance" (MCL 500.2123), which indicates that the next section's immunity for statements pertains to these topics only. The conduct described here simply does not fall within the statute.

Having disposed of defendants' immunity arguments, the question is whether the complaint presents plausible claims for relief.  Each count of the Second Amended Complaint is discussed in turn below.

## B.  Count I - Tortious Interference

### 1.  Defendants' Arguments

Defendants contend that plaintiffs' tortious interference claim fails for several reasons.  First, defendants contend that because the claim rests on defamation it fails.

Second, defendants contend that plaintiffs have not sufficiently plead a tortious interference claim.  The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by

---

[6]The last antecedent rule of construction does not apply if "something in the statute requires a different interpretation."  Hardaway v. Wayne Co., 494 Mich. 423, 427 (2013).

9

the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.  <u>Health Call of Detroit v. Atrium Home & Health Care Services, Inc.</u>, 268 Mich. App 83, 89–90 (2005).  "One who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another."  <u>Derderian v. Genesys Health Care Sys.</u>, 263 Mich. App 364, 382 (2004)(internal quotation marks and citation omitted).  Therefore, the party asserting a claim of tortious interference "must establish that the interference was improper." <u>Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n.</u>, 257 Mich. App 365, 383 (2003).  "The 'improper' interference can be shown either by proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship."  <u>Id</u>.

## 2. Resolution

As an initial matter, defendants concede that Michigan courts are split on the issue of whether a tortious interference claim can stand if the tortious interference is incidental to a defamation claim.  See <u>Meyer v. Hubble</u>, 117 Mich. App. 699, 709-11 (1982).  At this point, it is not clear whether plaintiffs' tortious interference claim is subsumed within their defamation claim such that harm to the plaintiff businesses would be taken into consideration in any damages award for defamation.  As such, dismissal of the tortious interference claim on this ground is not appropriate at this time.

### a. Farmers

10

As to Farmers, plaintiffs state that during the course of investigating insurance claims, representatives of Farmers all engaged in conduct that would statutorily qualify as defamation per se or defamation. Under M.C.L. § 600.2911(1), the uttering and publishing of words imputing the commission of a criminal offense constitutes defamation per se.  In such instances where ones words "impute the commission of a criminal offense," damage to a person's reputation and feelings are presumed.  Plaintiffs state that Farmers violated M.C.L. § 600.2911, thereby tortiously interfering with plaintiffs' customers, by making direct contact with several of the plaintiffs' customers and asserting fraudulent and defamatory misrepresentations relative to Marks One Collision's quality of work product.  The allegations included specific accusations that the plaintiffs engage in fraudulent insurance schemes and the criminal act of forgery. This conduct is described in particularity with respect to time, place and conduct.  See Complaint Exhibit F – Affidavit of Catherine Jackson; Complaint Exhibit G – Affidavit of Linda Green; Complaint Exhibit H – Affidavit of Melody Garvin and Complaint Exhibit I – Affidavit of Sherrell Jones).

The Court is satisfied that the foregoing assertions are sufficient to state a plausible claim that Farmers undertook these actions to disrupt plaintiffs' ongoing and potential business relationships with its customer base and caused irreparable harm to plaintiff's business reputation.  The allegations are pled with factual particularity and meet the necessary standard to state a claim for tortious interference with business relationship.

**b.  Auto Club/Citizens**

11

As to Auto Club/Citizens, plaintiffs state that during the course of investigating insurance claims, their representatives engaged in conduct that would statutorily qualify as defamation per se or defamation.  Plaintiffs state that Auto Club made direct contact with several of the plaintiff's customers and asserting fraudulent, derogatory and defamatory misrepresentations relative to Marks One Collision's quality of work product and asserting the very specific defamatory and slanderous misrepresentation that principal owner of Marks One Collision, Maher Waad, committed the felony crime of Forgery.  Furthermore, plaintiffs state that Auto Club placed customer insurance claims under investigation for no other reason than the customer selected a non-Direct Repair Program shop (Marks One Collision) for its repairs needs.  An affidavit attached to the Second Amended Complaint states that on or about the date of January 31st, 2014, during a telephone conversation with Joseph Camaj, Auto Club Group Regional Claims Manager, Christopher Bara, specifically accused Marks One Collision of committing the felony crime of Forgery and advised Mr. Camaj. that "he would be going after Marks One."  See Second Amended Complaint (Exhibits J, K, and L).

As to Citizens, plaintiffs state that Citizens intentionally sought to tortiously interfere with Plaintiff's business relationships by, inter alia, engaging in the following improper conduct; Making direct contact with one of the plaintiffs' customers and asserting fraudulent, derogatory and defamatory misrepresentations relative to Marks One Collision's quality of work product and more notably stating that plaintiffs engage in fraudulent insurance schemes.  This conduct is described in particularity in Exhibit O to the Second Amended Complaint.

The foregoing statements support a plausible claim that Auto Club/Citizens and

12

Citizens intentionally undertook these actions to disrupt plaintiffs' ongoing and potential business relationships with its customer base and caused irreparable harm to plaintiffs' business reputation.  As such, plaintiffs have met the necessary pleading standard to set forth a tortious interference with business relationship claim.

### c.  Geico

As to Geico, plaintiffs say that paragraph 38 sets forth the existence of a business relationship, while paragraph 39 confirms that the defendants were aware of such a relationship because their insured motorists had "consistently used Plaintiff's car rental services, as well as Plaintiff's collision shop services."  Paragraphs 44 through 46 in conjunction with customer affidavits, Exhibits P and Q to the Second Amended Complaint details a pattern of intentional conduct by GEICO as its employees aggressively pursued plaintiffs' customers, using unsupported accusations of fraud and theft in order to interfere with their business relationship or expectancy.  The Court finds these statements sufficient to set forth a tortious interference with business relationship claim.

### d.  Defendants' Other Arguments

To the extent defendants contend that they had legitimate business reasons for their actions, thereby precluding a tortious interference claim, this argument does not carry the day.  The Second Amended Complaint and exhibits describe activity that plausibly goes beyond defendants simply trying to protect their insureds from fraud.

Likewise, to the extent defendants contend that plaintiffs do not have a legitimate expectancy of future business because the need for car-repair and car-rental services is

dependent upon "wishful thinking," this argument too misses the mark.  Courts have allowed a tortious interference claim brought by a company providing services that may depend on fortuitous events but whose expectancy of future business was still a reasonable probability.  For example, in <u>Lucas v. Monroe County</u>, 203 F.3d 964 (6th Cir. 2000), the plaintiff towing companies sued the county and members of the sheriff's department because the companies were excluded from a "call list" kept by the sheriff's department for use by deputies when in need of a tow truck.  <u>Id.</u> at 967.  The defendants dropped the plaintiffs from the "call list" after the plaintiffs complained at a county board of commissioners' meeting that the sheriff's department gave preferential treatment to companies on the list owned by political supporters of the sheriff, even though the department was required to distribute references more or less evenly. Id. at 968-71.  The Sixth Circuit reversed the district court's finding that these actions did not constitute tortious interference with contracts, holding that the plaintiffs had "a reasonable expectancy of an economic relationship with stranded motorists who arranged for towing services."  <u>Id</u>. at 979.

Plaintiffs have stated that they have a similar reasonable expectancy of future business from motorists following accidents, particularly from long-standing customers. Plaintiffs have sufficiently alleged this element of a tortious interference claim.

### C.  Count II - Defamation

### 1.  Defendants' Arguments

Defendants argue that plaintiffs' defamation claim must be dismissed because any statements they made about plaintiffs are subject to the shared-interest privilege. The question of whether a privilege applies is a question of law.  <u>Lawrence v. Fox</u>, 357

14

Mich. 134, 139-40; 97 N.W.2d 719, 722 (1959).  As explained in <u>Zanley v. Hyde</u>,

> Where a party makes a communication and such communication is
> prompted by a duty owed either to the public or to a third party, or the
> communication is one in which the party has an interest and it is made to
> another having a corresponding interest, the communication is privileged
> if made in good faith and without actual malice.
> . . . .
> It extends to all communications made bona fide upon any subject-matter
> in which the party communicating has an interest, or in reference to
> which he has a duty, to a person having a corresponding interest or duty.
> And the privilege embraces cases where the duty is not a legal one, but
> where it is of a moral or social character of imperfect obligation.

208 Mich. at 102 (internal quotation marks omitted).  "The elements of a qualified

privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its

scope, (4) a proper occasion, and (5) publication in a proper manner and to proper

parties only." <u>Prysak v. R.L. Polk Co.</u>, 193 Mich. App. 1, 15 (1992). If a party shows it is

entitled to the protections of a qualified privilege the plaintiff must prove actual malice

and falsity.  <u>Pfeiffer</u>, 320 Mich. at 269-270

Defendants argue that their statements are protected by the shared-interest

privilege.  The statements, they say, were directed toward ensuring that quality work

was performed on damaged vehicles or uncovering insurance fraud or detecting

forgery.  They say that there is no indication in the Second Amended Complaint that the

statements were made in bad faith.  And they say that an an insurance company and

policyholder have a shared interest in preventing insurance fraud and forgery, as well as

ensuring that a vehicle is properly repaired, to prevent rate increases that would occur if

insurance fraud or forgery continued and if cars are not properly repaired.  Defendants

further say that the statements detailed in the various affidavits were limited to claims

and investigations and suggested that policyholders seek another repair shop because

15

of prior problems with plaintiffs' quality of work and/or fraudulent conduct.  Thus, the statements were made on a proper occasion (as part of an investigation into insurance fraud or as a discussion relating to an insurance claim) and were published in a proper manner and to proper parties.

### 2. Resolution

Plaintiffs say that the statements fall outside the shared interest privilege.  The Court agrees.  The statements were not limited in its scope to its purpose.  The statements went beyond informing the policyholders regarding the quality of plaintiffs' work and fraudulent conduct.  Defendants' representatives are alleged to have informed plaintiffs' customers (and defendants' policyholders) that Mark Waad had (already) committed forgery and that he (already) had a reputation for fraudulent conduct.  The statements directed to the customers are beyond the scope of what information could reasonably be deemed necessary to convey to the customers.  Moreover, if defendants' motive was to prevent insurance fraud and forgery, the customers may not be the proper parties to whom the statements should have been made.  Allegations regarding fraud should logically only be directed to law-enforcement authorities, not policyholders.

Defendants also argue that because they are entitled to a qualified privilege, plaintiffs "must prove actual malice" which they say plaintiffs cannot do.  Putting aside that the privilege does not apply, plaintiffs have sufficiently plead malice.

### D.  Count IV - Civil Conspiracy

### 1.  Defendants' Arguments

Under Counts IV and VI, plaintiffs set forth conspiracy claims under state and

16

federal law.  Defendants say that any conspiracy claim fails because "there is no

evidence of an underlying tort [necessary for state law], no evidence of an agreement"

between the defendants, and the claim is not sufficiently pled.

Under Michigan law, a civil conspiracy is defined as

a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means. In addition, to establish a concert-of-action claim, a plaintiff must prove that all defendants acted tortiously pursuant to a common design that caused harm to the plaintiff.  For both civil conspiracy and concert of action, the plaintiff must establish some underlying tortious conduct.

Urbain v. Beierling, 301 Mich. App 114, 131–32 (2013) (citations and internal quotation

marks omitted).

## 2.  Resolution

Here, because the Court has concluded that plaintiffs have stated plausible

claims for tortious interference and defamation, defendants' argument for dismissal of

the civil conspiracy count on this ground fails.

Regarding whether plaintiffs have substantively plead a plausible conspiracy

claim under state law, a careful factual review of the Second Amended Complaint's

supporting affidavits, shows that a reasonable inference can be made that it may not be

a coincidence that all the defendants employed the same investigative tactics, initiated

the same special investigative unit inquiries, implemented the same investigative

databases, and may have acted collectively and in concert remove plaintiffs from their

Direct Repair Programs.  Discovery may reveal otherwise.  In short, the Second

Amended Complaint makes out a civil conspiracy claim sufficient to survive a motion to

dismiss.

17

### E.  Count VI - Federal Conspiracy

#### 1.  In General

In order to establish a violation of 42 U.S.C. § 1985 (3), a plaintiff is required to plead and prove: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class or persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States.  Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir. 1994). Additionally, plaintiff must allege "the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus."  Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999).

#### 2.  Resolution

#### a.  Geico and Auto Club/Citizens

Regarding plaintiffs' federal conspiracy claim under § 1985 with respect to Geico and Auto Club/Citizens, section 1985 is a remedial statute, and must be predicated on an underlying violation of a constitutional right.  Here, plaintiffs say that the violation of § 1981 is the predicate violation.  See Second Amended Complaint at ¶ 88.  However, plaintiffs have not brought a § 1981 claim against Geico or Auto Club/Citizens.  Absent an underlying violation of a federal constitutional right, plaintiffs cannot plausibly bring a § 1985(3) conspiracy claim against Geico or Auto Club/Citizens.  While the Second Amended Complaint states that "discovery will reveal" evidence of a racially motivated conspiracy, see Second Amended Complaint at ¶ 81, this is insufficient to plead a

federal conspiracy claim against Geico and Auto Club/Citizens.

### b.  Farmers

As to a claim under § 1985, plaintiffs in particular point to the racially discriminatory statements from a Farmers representative as sufficient to support an allegation that the conspiracy was motivated by a racial bias.  However, these allegations form the basis for plaintiffs' § 1981 claim which is brought only against Farmers.  In other words, there are no alleged co-conspirators with respect to plaintiffs federal conspiracy claim predicated on an alleged racially based conspiracy.  Absent a co-conspirator, there can be no conspiracy.  While plaintiffs say that discovery will show the involvement of other defendants, plaintiffs' failure to allege an underlying violation of a constitutional right, i.e. a § 1981 claim, against the other defendants is fatal to establishing a plausible federal conspiracy claim against Farmers.

### E.  Count V - Section § 1981

### 1.  Farmers' Arguments

This claim is brought only against Farmers.  To make out a claim under § 1981, a plaintiff is required to plead that "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981."  Amini v. Oberlin Coll., 440 F.3d 350, 358 (6th Cir. 2006).

Farmers argues that plaintiffs only alleged a "handful of facts" that could arguably support a claim and that plaintiffs have not set forth facts beyond conclusory allegations

19

from which a reasonable person could infer that Waad's race factored into the decision

of to terminate the direct billing relationship.

### 2.  Resolution

Plaintiffs contend that the allegations provide sufficient detail to raise this claim

above the speculative level.  The Court agrees.  Plaintiffs says the Second Amended

Complaint contains detailed factual allegations to support the contention that Farmers

factored race in the termination of the direct billing relationship with plaintiffs.  As noted

in a witness affidavit, Michigan's State Director of Claims, Mark Ott, specifically noted

he did not want to do business with "crooked Arabs" and "sand niggers."  Exhibit D to

the Second Amended Complaint.  This statement was preceded by an incident in which

two Farmers Insurance adjusters, Steve Wezner and Kevin Wegrzyowicz, engaged in a

verbal altercation with Maher Waad calling him a "stupid Arab", a "sand nigger" and

threatened to "get him."  Shortly after these racial attacks, Farmers had, in plaintiffs'

view, "got him," when it terminated plaintiffs' direct billing relationship.  Furthermore,

plaintiffs say that the underlying racial discrimination and harassment exhibited by

Farmers, which gave rise to the decision not to "do business with Arabs," was

acknowledged at the executive level of Farmers own Insurance Company. See Witness

Affidavit, Exhibit E to the Complaint.

Based on this conduct, despite a six months lapse in time between the

discriminatory remarks and removal from the direct billing program, it is plausible that

the decision to remove the plaintiffs from direct billing status was "(3) discriminatory

conduct that abridged a right enumerated in section 1981(a)," particularly as Farmers'

representatives specifically expressed their intention to "get" plaintiffs and to not do

business with Arabs.  Therefore, plaintiffs' discrimination claim under § 1981 cannot be resolved on a motion to dismiss.

## VI.  Conclusion

For the reasons stated above, defendants' motions are GRANTED IN PART AND DENIED IN PART.  Count III is DISMISSED.  Count VI is DISMISSED.  The case continues against all defendants on Counts I, II, IV.  It continues against Farmers on Count V.

SO ORDERED.


  S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  October 22, 2014
      Detroit, MI

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 22, 2014, by electronic and/or ordinary mail.


S/Sakne Chami
Case Manager, (313) 234-5160