UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARKS ONE CAR RENTAL, INC., MARKS
ONE LLC, d/b/a/ MARKS ONE COLLISION,
and MAHER WAAD,

    Plaintiffs,

vs.                                                    Case No. 13-14610

FARMERS INSURANCE EXCHANGE          HON. AVERN COHN
CITIZENS INSURANCE COMPANY OF
AMERICA,

    Defendants.
_____/

**MEMORANDUM AND ORDER GRANTING**
**FARMERS' MOTION FOR SUMMARY JUDGMENT (Doc. 273)**
**AND DISMISSING CASE**

I. Introduction

This is a business tort case. Marks One Car Rental, Inc., Marks One, LLC, Marks One Collision (collectively Marks One) and Maher Waad (Waad), collectively "plaintiffs," are suing Farmers Insurance Exchange (Farmers).[1] Plaintiffs make the following claims:

    Count I - Tortious Interference with Business Expectancy

    Count II - Defamation

---

[1] Plaintiffs initially sued several insurance and car rental companies. Following motion practice and stipulations, only Farmers remains as a defendant. See Doc. 70 (Enterprise Leasing), Doc. 71 (Hertz Corporation), Doc. 87 (Titan Insurance, Allied Insurance, Nationwide Insurance), Doc. 88 (HelpPoint Claims Services), Doc. 141 (Bristol West Insurance, Foremost Insurance, 21st Century Insurance), Doc. 234 (Auto Club Group), Doc. 248 (Geico Insurance), and Doc. 262 (Citizens Insurance).

Count IV - Civil Conspiracy

Count V - Unlawful Discrimination under 42 U.S.C. § 1981

Broadly stated, plaintiffs allege that Farmers has defamed plaintiffs to customers and potential customers during fraud investigations into plaintiffs' repair and rental activity. Plaintiffs contend the investigations were unfounded and caused a loss of business. They further contend that certain employees of Farmers used racial slurs and have a racial bias against Waad, an Arab-American.

Before the Court is Farmers' motion for summary judgment. For the reasons that follow, the motion will be granted.

## II. Background

### A. Plaintiffs' Claims

Plaintiffs allege that Farmers tortiously interfered with the contracts of four customers and made defamatory statements to them concerning Plaintiffs' business. (Doc. 91, Second Amended Complaint at ¶ 40) Plaintiffs also allege that Farmers discriminated against them based on race by cancelling a purported "direct bill" agreement concerning the manner in which payments were made for rental cars. Id. at ¶ 77. Finally, plaintiffs allege that Farmers engaged in a conspiracy with other defendants – although all of these other defendants have since been dismissed from this case. Id. at ¶ 68.

More specifically, Count I (Tortious Interference) and Count II (Defamation) identify four customers whose purported ongoing and prospective business relationships with plaintiffs were interfered with by defamatory and false statements made to them by Farmers' agents regarding the quality of services performed by Marks

2

One ("the Disputed Statements"). In support, plaintiffs rely upon the affidavits of four customers which are attached to the Second Amended Complaint: Sherell Jones, Melody Garvin, Catherine Jackson, and Linda Green. As to Garvin and Jones, the Disputed Statements also concerned allegations of forgery surrounding the endorsement of checks. The four customers were deposed. Their deposition testimony will be discussed in further detail below.

B. Relevant Procedural History

Although filed in 2013, the case dragged on due for several reasons, including the filing of amended complaints, motions to dismiss filed by the various defendants, discovery disputes, a motion to disqualify plaintiffs' first counsel, and plaintiff's multiple changes in counsel.[2] About a year after the case was filed, the Court ordered plaintiffs to "file a detailed account of their damages claim" (Doc. 141, p. 2). Plaintiffs subsequently filed (Doc. 144). Plaintiffs' statement (the "Account of Damages") describes the compensatory damages, direct and consequential, that the plaintiffs seek based on the allegations and claims set forth in the Second Amended Complaint. In short, plaintiffs seek millions in damages. Although only Farmers remains a defendant, plaintiffs maintain damages in the millions is still warranted.

The Court also made the observation in ruling on certain defendants' motions to dismiss that "important for resolving the motions is the fact that the Court must accept the statements in the Second Amended Compliant and exhibits as true. Whether the statements will hold up after discovery is another matter." (Doc. 29, p. 3.).

---

[2]Current counsel is plaintiffs' thirteenth (13) attorney.

The record is now more fulsome. To date, seven current and former employees of Farmers have been deposed, four employees of plaintiffs and 21 other individuals have been deposed.[3] These depositions include persons with personal knowledge of the asserted acts of wrongdoing by Farmers pled in the Second Amended Complaint and plaintiffs' 14 depositions.

C. Farmers' Motion

Farmers seeks summary judgment on the claims against it based on the following reasons:

1. the lack of proof of a factual causal connection between the Disputed Statements and the impairment of plaintiffs' business prospects as well as the damages described by plaintiffs in their Account of Damages;

2. the lack of proof of re-publication of the Disputed Statements;

3. the Disputed Statements, even if made, do not constitute defamation per se;

4. there is undisputed evidence of fraudulent activities by plaintiffs;

5. the lack of evidence of any contract for direct billing between plaintiffs and Farmers and the fact that plaintiffs are only incidental beneficiaries of Farmers' contracts with their policy holders and that no acts by Farmers prohibits those policy holders from entering into contracts with Plaintiffs, all of which bars Plaintiffs standing to assert (affirmative defense #3) any claims under 42 U.S.C. Section 1981 for discrimination; and

6. The Court's ruling in a related case is res judicata as to plaintiffs' claims in this case

III. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no

---

[3]This number does not include depositions taken by defendants who are no longer in the case.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In so doing, the Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

### IV. Analysis

Farmers' arguments are addressed below within the confines of plaintiffs' claims.

#### A. Tortious Interference

The elements of tortious interference with a business relationship or expectancy are:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

Health Call v. Atrium Home & Health Care Servs., 268 Mich. App. 83, 90 (2005).

A valid business expectancy is defined as one that "must be a reasonable likelihood or probability, not mere wishful thinking." Trepel v. Pontiac Osteopathic Hospital, 135 Mich. App. 361, 377 (1984). A plaintiff must identify the relationship supposedly interfered with and the acts that did so.

Here, plaintiffs have identified four customers. Plaintiffs must show that Farmers' "conduct caused [the four customers] to terminate or disrupt [their] business relationship or expectancy [with Plaintiffs]" and that plaintiffs were "damaged as a result" of this conduct.

Farmers says that plaintiffs cannot prevail on their tortious interference claim because the undisputed evidence through the deposition testimony of the four customers shows that the Disputed Statements because none of the customers severed their relationships or potential opportunities with plaintiffs based on those statements and actions. In other words, plaintiffs cannot show that there was any interference as a result of the Disputed Statements. The Court agrees.

As to the four customers, Sherell Jones testified that she continues to rent vehicles from plaintiffs "maybe four times a year when I'm going out of town." (Farmers Ex. A, Jones Dep. 61-62.) Linda Green testified that if she has any vehicle damage in the future, she will take her car to plaintiffs to be repaired. (Ex. D, Green Dep. 25.) •

6

Melody Garvin testified that, even after the Farmers inspection, she felt that "My car is fine. They did a good job. I'm fine." (Ex. B, Garvin Dep. 71-72.) As to Jones and Green, they admitted that their business relationships with plaintiffs were not impaired by the Disputed Statements. As to damages, none of these customers identified any instance that "but for" the Disputed Statements they would have sent business to plaintiffs and chose not to.

Garvin, however, testified that she would not go to plaintiffs' businesses again because of what she saw on television concerning a later police raid. As explained below, plaintiffs have no evidence connecting the police raid with any statements made by Farmers.

Catherine Jackson testified that she would not return to plaintiffs' businesses, although this was not because of any actions or statements by Farmers, but instead because her boyfriend subsequently had a vehicle repaired there, and "the vehicle is falling apart now." (Ex. C, C. Jackson Dep. 27-28.) Jackson's decision to stop taking her vehicles to plaintiffs' businesses was not caused by any actions of Farmers – it was caused by her dissatisfaction with plaintiffs' work on a different vehicle at a different time. "'An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable.'" Black v. Shafer, 499 Mich. 950, 951 (2016). "An intervening cause is considered reasonably foreseeable when the defendant's negligence 'enhances the likelihood that the intervening cause will occur." Rupert v. Daggett, 695 F.3d 417, 426 (6th Cir. 2012). Here, a superseding cause totally independent from the Disputed Statements led to plaintiffs'

7

loss of Jackson as a future customer. Accordingly, as to Jackson, there also is no causal connection between the Disputed Statements and any impairment of business relationships or damages incurred by plaintiffs.

Overall, plaintiffs have not established a genuine issue of material fact to support their tortious interference claim.

### B. Defamation

Like a claim for tortious interference, a claim of libel and slander also include proof that "as a result of the [libel/slander] statement, the Plaintiff suffered some damage." M Civ JI 118.05 Libel, Slander.

To prove a claim of defamation, a plaintiff must show the following:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

Lakin v. Rund, 318 Mich. App. 127, 133 (2016) (internal citation omitted). Farmers says that like the tortious interference claim, plaintiffs did not suffer any damages as a result of the Disputed Statements. The Court agrees.

### 1. Four Customers

The factual basis for the tortious interference claim is the same as plaintiffs' defamation claim in Count II. Two of the individual customers indicated that they intended to continue using plaintiffs' businesses. (Ex. A, Jones Dep. 61-62; Ex. D, Green Dep. 25.) One indicated that she would no longer use them because of poor work on her boyfriend's vehicle, and not due to anything said by any representative of Farmers. (Ex. C, C. Jackson Dep. 27-28.) The final customer indicated that she would

8

not use Plaintiffs' businesses not because of anything said by Farmers, but because she saw a news report about a police raid of plaintiffs' businesses. (Ex. B, Garvin Dep. 77-78.)

Under Michigan law, "in actions based on libel or slander the plaintiff is entitled to recover only for the actual damages which he or she has suffered in respect to his or her property, business, trade, profession, occupation, or feelings." M.C.L. § 600.2911(2)(a). Because the Disputed Statements did not cause any actual damages to plaintiffs based on lost business from the four customers, Farmers also is entitled to summary judgment in its favor on Plaintiffs' defamation claim.

2. Other Business Damages

Plaintiffs' attempt to expand their alleged damages beyond the four customers to include "other business damages" fails. There is no admissible evidence causally connecting the Disputed Statements to either damages caused to plaintiffs' general business (See "Compensatory Damages," Doc. 144, pp. 8-11) or to the purported loss of an opportunity to establish a rental facility near Metro Airport working with the Airport Authority to rent cars to travelers and others (see "DTW Airport Expansion Opportunity," Docket Entry 144, pp. 12-19). The record is simply devoid of any evidence that the Disputed Statements were re-published by them to any other person. The Disputed Statements were never otherwise made public except through the filing of plaintiffs' Second Amended Complaint on May 28, 2014. The Court has previously observed that a plaintiff must identify the statements that constitute a republication of defamatory statements and cannot rely on the "rumor mill" or similar speculation to prove that re-publication occurred. Whiting v. Allstate Ins. Co., No. 08-12991, 2010 U.S. Dist.

9

LEXIS 23552, at *18 (E.D. Mich. Mar. 15, 2010).

Here, there is no evidence of republication of the Disputed Statements by anyone, much less Farmers, to either the Airport Authority or the general public. Accordingly, plaintiffs' requests for business related damages based on its loss of revenue and loss of the purported opportunity with the Airport Authority to open a new rental business nearby Metro Airport cannot be causally connected through any admissible evidence to the Disputed Statements. As such, plaintiffs cannot prevail on a claim for defamation related to these other alleged damages.

Further, plaintiffs fare no better in their contention that they have established damages based on the allegation that Farmers or their agents "tipped" Channel 4 regarding an upcoming "raid" on the businesses by Macomb County law enforcement. There is no evidence to supports this allegation. Indeed, Farmers employee Tom Berry testified that he did no such thing. (Ex. O, Berry Dep. 202) and Maher Waad testified he had no evidence that anyone from Farmers informed Channel 4. (Ex. M, Waad Dep. 221-223)

### 3. Defamation Per Se

Plaintiffs also contend that damages aside, Farmers is not entitled to summary judgment due because the Disputed Statements at issue were defamation per se and entitle Waad to damages for harm to his "feelings." Not so. Under Michigan law, only "actual damages" may be recovered for statements concerning a person's business, trade, profession, or occupation. Cofessco Fire Protection, LLC v. Steele, Nos. 290959, 292357, 2010 Mich. App. LEXIS 1896 at *7-8 (Oct. 7, 2010) (statements concerning a business are not defamation per se).

In addition, to the extent that plaintiffs characterize the Disputed Statements as accusations of criminal conduct and defamation per se as to Waad individually, the Disputed Statements do not rise to that level as a matter of law. "(E)xaggerated language used to express opinion, such as 'blackmailer,' 'traitor' or 'crook,' [and] does not become actionable merely because it could be taken out of context as accusing someone of a crime." Kevorkian v. AMA, 237 Mich. App. 1, 8 (Mich. App. 1999); see also Ghanam v. Does, 303 Mich. App. 522, 546 (Mich. App. 2014) ("Terms such as 'blackmailer,' 'traitor,' 'crook,' 'steal,' and 'criminal activities' must be read in context to determine whether they are merely exaggerations of the type often used in public commentary.").

### 4. Plaintiffs' Arguments

Plaintiffs assert that Farmers accused plaintiffs of criminal forgery with respect to the checks of the four customers. Plaintiffs contend that the customers gave plaintiffs permission to sign joint checks. However, the customers testified at their depositions that they told Farmers that they (the customers) had not given plaintiffs permission to sign their names to joint checks (Farmers' Motion Ex. A, S. Jones Dep. 28-31; Ex. B, Garvin Dep. 22-28.) Customer confusion and error when they confirmed to Farmers that they had not given plaintiffs permission to sign checks does not mean that Farmers was being defamatory. Thus, this argument does not save plaintiffs' defamation claim.

Plaintiffs also attempt to create an issue of fact by relying upon the four customer affidavits from 2014 which were attached to the Second Amended Complaint. As Farmers' notes, the Catherine Jackson and Linda Green affidavits say nothing about Farmers accusing plaintiffs of forgery. While Sherell Jones' and Melody Garvin's

11

affidavits state that a Farmers representative told them that their signature had been forged (Plaintiffs Ex. C, Jones Aff. ¶ 8; Ec. B, Garvin Aff. ¶ 6), they both contradicted this assertion in their subsequent depositions. (Farmers' Motion Ex. A, S. Jones Dep. 28-31; Ex. B, Garvin Dep. 22-28). Plaintiffs "cannot thwart the purpose of Rule 56 by creating issues of fact through affidavits that contradict their own depositions," even when those affidavits pre-date the depositions. See Darnell v. Target Stores, 16 F.3d 174, 177 (7th Cir. 1994).

Overall, plaintiffs have not put forth sufficient evidence to make out a defamation claim for trial. No reasonable juror could find for plaintiffs based on the record.[4]

5. Truth as a Defense

C. 42 U.S.C. § 1981

Section 1981 protects against racial discrimination in the making and enforcement of contracts. See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, (2006) ("Section 1981offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship.") To establish a claim under Section 1981, a plaintiff must allege facts in support of the following elements: (1) plaintiff is a member of a racial

---

[4]Farmers also contends that plaintiffs' defamation claim should be separately dismissed because the Disputed Statements, which all concern the quality and honesty of plaintiffs' business practices and repairs performed on vehicles, are true. Farmers says facts uncovered by Farmers' investigation of these practices demonstrates that plaintiffs act fraudulently in the conduct of their business. "Truth is an absolute defense to a defamation claim." Wilson v. Sparrow Health Sys., 290 Mich. App. 149, 155 (2010). Farmers says that its investigation proves that plaintiffs routinely failed to perform the repairs which they agreed to repair, and repaired parts they agreed to replace, and left damaged parts on vehicles despite being paid to replace them. The Court declines to address this argument because plaintiffs' claim fails for the reasons discussed supra.

12

minority, (2) defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.). Johnson v. Harrell, 142 F.3d 434, 1998 WL 57356 (6th Cir.1998) (citing Morris v. Office Max, Inc., 89 F.3d 411, 413 (7th Cir.1996).

Here, plaintiffs essentially contend that Farmers impaired its ability to contract with potential customers. Plaintiff must first establish that a contract exists. See Cook v. The Advertiser Co., 458 F.2d 1119, 1122 (5th Cir. 1972) (no claim under § 1981 for termination of contract when there was no contract in the first instance); Black Agents & Brokers Agency, Inc. v. Ward, 409 F.3d 833, 837 (7th Cir. 2005) ("To begin with, it is difficult to understand how the [defendants] could have intended to discriminate against [plaintiff] in the making and termination of a contract when the two were never parties to a binding agreement, nor were they trying to enter into an agreement.").

1. Direct Billing

Plaintiffs' claim is based on the following allegations: that Marks One Car Rental was a participant in a "Direct Billing Program" with Farmers, and that Farmers terminated Marks One Car Rental from that contract based on the race of its principal, Maher Waad. (Doc. 91, Second Amended Complaint. ¶¶ 77-79; Docket Entry 144, Account of Damages pp.19-20.).

Farmers says that this claim fails because there is no proof that Farmers ever entered into a "direct billing program" with any of the plaintiffs and there is no evidence of any contract. The Court agrees. Waad conceded at deposition that there was no such contract – the claims were based solely upon his belief as to the contents of

contracts between Farmers and its insureds. (Ex. M, Waad Dep. 99.)  Because there is no evidence of a "direct bill" contract between Farmers and plaintiffs, Farmers could not have "terminated" any such contract.  Waad's speculative testimony is insufficient.  Summary judgment is therefore appropriate.

Farmers also says that to the extent plaintiffs argue that not having a direct billing agreement with Farmers is in and of itself a violation of section 1981, such argument must fail because plaintiffs were free to contract with Farmers' customers even without a direct billing agreement.  The Court agrees.  Here, having a "direct billing" relationship with Farmers is not a prerequisite for Marks One to do business with Farmers' insureds and, while it might make Marks One "less attractive" to some insureds, refusing to enter into such a relationship does not preclude Marks One from renting cars to those insureds.  As a result, plaintiffs' alleged wrongful conduct does not satisfy the necessary elements for plaintiffs to make out a viable claim under 42 U.S.C. §1981.  See Harris v. Allstate Ins. Co., 300 F.3d 1183 (10th Cir. 2002)

2.  Farmers' Contracts with Insureds

Farmers also says that plaintiffs have no claim under section 1981 arising out of any contracts Farmers had with its insureds.  While Marks One benefits by performance of the insured's contract with Farmers if the insured decides to rent a car from Marks One, it is only as an incidental beneficiary.  Incidental beneficiaries, however, lack standing to bring claims for breach of contract.  See, e.g. Kisiel v. Holz, 272 Mich. App. 168, 170 (2006) ("Only intended, rather than incidental, third-party beneficiaries may sue when a contractual promise in their favor has been breached").  Thus, incidental beneficiaries, such as plaintiffs, also do not have standing to assert a section 1981

14

claims as a matter of law. See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 478 (2006) (Section 1981 cannot be enforced by third party beneficiaries, but only by those individuals whose rights to make and enforce a contract were impaired).

### 3. Plaintiffs' Arguments

Plaintiffs "concede there was no written contract regarding billing procedures" but contend that "whether there was a billing arrangement is a question of fact." This argument does not carry the day. The only "billing arrangement" between the parties is that plaintiffs were third party beneficiaries to insurance policies between Farmers and its insureds. Farmers insureds remain free to obtain a rental from any rental shop they would like to use.

Plaintiffs also attempt to improperly amend their pleadings to increase the scope of their § 1981 claim by suggesting it encompasses the use of "racial slurs." Plaintiffs, however, offer no evidentiary support or otherwise show how the uttering of racist language creates a cause of action under §1981.

### D. Civil Conspiracy

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." Admiral Ins. Co. v. Columbia Cas. Ins. Co, 194 Mich. App. 300, 313 (1992). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." Advocacy Org. for Patients & Providers v .Auto Club Ins. Ass'n, 257 Mich. App. 365, 384 (2003) (internal quotations omitted).

Here, Farmers is entitled to summary judgment on plaintiffs' conspiracy claim for two reasons. First, "conspiracy" by itself, is not a cause of action but is rather a method

15

to apportion liability among multiple defendants for the underlying tortious acts. See Roche v. Blair, 305 Mich. 608, 613-614 (1943). Second, because Farmers is the only defendant, there is no one with whom it can conspire and there is no evidence that Farmers conspired with any of its former co-defendants.

### E. Res Judicata Due and Claim Splitting

In light of the above, the Court declines to address Farmers' argument that all of plaintiffs' claims should separately be dismissed under the doctrine of res judicata due to Plaintiffs' decision to engage in improper claim splitting by filing the separate case of Maher Waad, Marks One Car Rental, and Marks One Collision v. Farmers Insurance Exchange, Allen Keller, et al, Case No. 16-13362.

### F. Plaintiffs' Arguments Not Addressed Above

Plaintiffs suggest that they need additional discovery to make out their claims beyond what is in the record. Plaintiffs, however, have not following the requirements of Fed. R. Civ. P. 56(d) or making the required showing of need. Thus, this request rings hollow.

Plaintiffs also now assert that the interference claim extends outside their pleadings to "an identifiable class of third parties." Plaintiffs, however, do not provide any evidence concerning the existence of this "class." Liberty Heating & Cooling, Inc. v. Builders Square, Inc., 788 F. Supp. 1438, 1451 (E.D. Mich. 1992) (granting summary judgment dismissing claims of interference with a "class" of customers when no evidence of this class was provided).

Plaintiffs also now claim that a "refusal" by Farmers to enter into a direct bill contract with Plaintiffs constitutes "interference" by Farmers with Plaintiffs' relationships

with its customers. This argument lacks merit. Plaintiffs do not have a "legal right to require" Farmers to enter into a contract with them.

VI. Conclusion

For the reasons stated above, there is no genuine issue of material fact as to whether plaintiffs can prevail on their claims. Reasonable minds could not differ that based on the record, plaintiffs have failed to make out any triable issues. Accordingly, Farmers' motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 3/5/2018
    Detroit, Michigan